**Widelto LEYVA, Petitioner,**

v.

**SUPERINTENDENT, GREEN HAVEN
CORRECTIONAL FACILITY,
Respondent.**

No. 76 C 131.

United States District Court,
E. D. New York.

March 4, 1977.

Louis R. Rosenthal, Brooklyn, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. for State of N. Y., Rhonda Amkraut Bayer, New York City, for respondent.

## MEMORANDUM ORDER

NEAHER, District Judge.

Petitioner seeks a writ of habeas corpus following his conviction, with two co-defendants, of criminal possession of dangerous drugs (1st and 4th degrees) after a jury trial in State Supreme Court, Kings County. He is presently serving a sentence of 15 years to life imprisonment. The judgment of conviction was unanimously affirmed by the Appellate Division, 46 A.D.2d 740, 360 N.Y.S.2d 596 (1974), and, in a written opinion, by the Court of Appeals, 38 N.Y.2d 160, 379 N.Y.S.2d 30, 341 N.E.2d 546 (1975).

■ Petitioner's first claim is that his conviction was obtained through the prosecutor's knowing use of perjured testimony.[1]

Specifically he charges that the detectives and an assistant district attorney who participated in his arrest falsely testified in a suppression hearing before trial, and at trial, to their use of an informant when in fact there was no informant and an illegal wiretap was the source of their information.

■ Before a constitutional claim may be asserted on federal habeas corpus, however, the federal claim must first be fairly presented to the State courts. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). A careful review of the papers submitted does not support petitioner's contention that this due process claim was presented to the State court. Petitioner, in arguing to the New York Court of Appeals that the identity of the informant whose information had supplied probable cause for the arrest should have been disclosed, pointed out that the detectives who testified were, at time of the appeal, under federal or State indictment.[2] This statement merely attacked their credibility and did not charge perjury.

■ Petitioner's cause is not helped even if he did not learn until after his appeal to the Court of Appeals of the possibility of perjury. He may still move in the Supreme Court to vacate judgment on grounds of the knowing use of material false evidence. See N.Y.Crim.P.L. § 440.10, the statutory counterpart to a writ of *coram nobis*. *People v. Zimmerman*, 10 N.Y.2d 430, 224 N.Y.S.2d 2, 179 N.E.2d 849 (1962); *People v. McElroy*, 11 A.D.2d 556, 200 N.Y.S.2d 442 (1960). If the State refuses to hear his claim, then petitioner may rightfully turn to the federal court. *United States ex rel. Leeson v. Damon*, 496 F.2d 718, 721 (2 Cir.

1. As a general statement of law, a conviction procured through the knowing use of perjured testimony is fundamentally unfair and deprives the defendant of due process of law if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and cases cited therein. See also *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967).

2. Petitioner argued:
   "As the credibility of Detective Viera and the other officers is in question, the Court's attention is respectfully directed to the fact that Detectives Viera, McLean and Cordelia are all under state or federal indictment for extortion, bribery and violation of the Civil Rights Act in connection with the [sic] police activities." Brief of Appellant Leyva to the New York Court of Appeals, p. 23.

1974).   But until the avenue of relief in the State court is exhausted, federal habeas corpus is unavailable.   See *Sitarski v. State of New York*, 358 F.Supp. 817 (W.D.N.Y. 1973); *cf. United States ex rel. Rohrlich v. Wallack*, 251 F.Supp. 1009 (S.D.N.Y. 1966). Petitioner's request for an evidentiary hearing on this claim must therefore be denied.

▆ Petitioner's second claim, that he was denied his fourth amendment rights, is again based on his contention that his arrest and the search of the car were the products of an illegal wiretap, rather than the use of a reliable informant, as had been the testimony at trial.   This claim must await determination by the State court of the perjury issue.[3]

Finally, petitioner claims that the application of the following statutory presumption denied him due process of law:

"The presence of a dangerous drug in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such drug was found."   N.Y. Penal L. § 220.25.[4]

The constitutional defect asserted is that the statute lacks a rational connection and impermissibly shifts the burden of proof on an element of the offense to the defendant to disprove it.

Respondent argues that petitioner failed to raise the issue of the constitutionality of

the presumption in the State court and may not do so *de novo* on habeas corpus.   Although petitioner objected at trial on due process grounds to use of the presumption, his brief to the New York Court of Appeals claimed simply that the prosecutor's comments with respect to defendant rebutting the presumption and the judge's explanation constituted reversible error.

▆ The Court of Appeals recognized, however, that "[t]he thrust of defendants' objections is clearly directed toward what they consider the inherent unfairness of the statutory presumption."   38 N.Y.2d at 164, 379 N.Y.S.2d at 33, 341 N.E.2d at 549.   Indeed, that court upheld the statute after review of the relevant United States Supreme Court cases before proceeding to discuss the defendants' arguments regarding its application to the facts of the case. Thus even though the petition on its face appears defective, the constitutionality of the statute has actually been ruled upon. Petitioner has sufficiently exhausted his State remedies.   See also *Stubbs v. Smith*, 533 F.2d 64 (2 Cir. 1976).

Before the jury were the following salient facts.[5]   Four New York City detectives and an assistant district attorney testified at trial that they left the District Attorney's office in two cars at about 3:15 p. m. on September 22, 1971, and proceeded to the Brooklyn side of the Williamsburgh Bridge.   When a 1969 gold-colored Chevro-

---

3.   Absent the perjury issue, petitioner's fourth amendment claim was fully and fairly litigated in the State court and is therefore precluded on habeas corpus. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).   Nor was disclosure of the informant's identity constitutionally required, even if his information formed the sole basis for probable cause of the arrest.   *Mapp v. Warden*, 531 F.2d 1167, 1173 (2 Cir. 1976).

4.   The statute continues with the following exceptions not applicable here:

"[S]uch presumption does not apply (a) to a duly licensed operator of an automobile who is at the time operating it for hire in the lawful and proper pursuit of his trade, or (b) to any person in the automobile if one of them, having obtained the drug and not being under duress, is authorized to possess it and such drug is in the same container as when he received possession thereof, or (c) when.

the drug is concealed upon the person of one of the occupants."

A 1973 amendment to the statute substituted the phrase "controlled substance" for "dangerous drug."

5.   No testimony as to the use of the informant was given at trial.   At the suppression hearing before trial, a detective testified that a reliable informant telephoned the District Attorney's office at 2:00 p. m. that day and informed him that, at 4:00 p. m., a 1969 gold-colored Chevrolet bearing Florida license plates would appear at the Brooklyn side of the Williamsburgh Bridge, that Carmen Garcia, known to the officer as a drug trafficker, and another man he described would be in the car, and that they would have a kilo of cocaine in a brown manila envelope.

4

let with Florida license plates appeared, they moved to intercept it and stopped the vehicle. The automobile contained three occupants, later identified as the driver Low, Carmen Garcia, sitting in the middle seat, and petitioner Leyva, sitting in the passenger seat. The detectives testified they recognized Garcia. Detective Viera testified that he pulled petitioner from the passenger side of the car and then retrieved a brown manila envelope, which he had seen on opening the car door, from the floor of the car. It protruded about 4 to 5 inches from underneath the front seat and had been between Garcia and petitioner. The envelope contained two packets of powder with more than a pound of cocaine.

The driver, co-defendant Low, testified as to his lack of knowledge of the presence of the cocaine. He stated that he had arrived in New York from Florida the previous day for employment purposes, and had met an acquaintance at Broadway and 42nd or 43rd Street who offered him a ride to New Jersey where he was heading. His friend stopped the car in front of a hotel somewhere in the 20's to do an errand and went into a hotel. The friend came out with Garcia and petitioner and asked Low to drive them to Brooklyn, which Low did. The "friend" did not accompany them. Neither Garcia nor petitioner testified or called any witnesses.

■ The validity of a presumption in a criminal case must meet a strict standard. Due process requires at least substantial assurance that the presumed fact be "more likely than not" to flow from the proven facts, Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and might even require satisfaction of the reasonable doubt standard in some situations. Barnes v. United States, 412 U.S. 837, 843, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). See United States v. Tavoularis, 515 F.2d 1070, 1075 n. 11 (2 Cir. 1975). Related to the validity of a presumption is the State's constitutional obligation to prove each element of an offense beyond a reasonable doubt. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); In re Winship,

397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969). Where one element is sought to be proved through the aid of a presumption, that element, it may be argued, should necessarily meet the test of proof beyond a reasonable doubt.

The constitutional test, as applied to the facts in this case, is whether presence of a large quantity of cocaine—over a pound—in an automobile was sufficient for a rational juror to find knowing possession of the drug by petitioner, as one of three occupants of the automobile, beyond a reasonable doubt.

■ For the reasons which follow, the court holds that the presumption of New York Penal Law § 220.25 passes constitutional muster in that the jury could find beyond a reasonable doubt that petitioner knowingly possessed cocaine.

Whether a presumption meets the requisite standard of reliability depends upon the particular circumstances of its use. Thus, in United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), the Supreme Court upheld a statute which permitted unexplained presence at an illegal still sufficient to support an inference that defendant was committing the offense of illegally carrying on the business of a distiller. Yet, in United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965), a statute which provided that the same presence at a still could support an inference of possession or control of the still, was struck down as allowing too tenuous a connection given the narrower scope of the offense and the absence of any showing of defendant's function at the still.

So too, in Leary v. United States, supra, the Court held that possession of marijuana was insufficient to prove defendant's knowledge that it had been illegally imported, and similarly, in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), with respect to cocaine, given the significant quantities of those drugs domestically produced. However, also in Turner, the Court upheld the statutory presumption with respect to knowledge of importation of heroin, given the factual

basis that virtually all heroin is imported. Finally, in *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the Court upheld the common law inference of guilty knowledge that goods were stolen from the unexplained possession of recently stolen goods.

Whereas statistical analysis provided the factual basis in *Leary* and *Turner* which precluded any rational inference that it was more likely than not that a possessor of marijuana or cocaine knew those drugs to be imported, but that in the case of heroin a possessor must know, in this instance common experience must be relied on to support the inference. *Cf. Barnes v. United States, supra.* The statute here is directed to the not uncommon situation in which several individuals are jointly involved but none of whom have clear-cut dominion over contraband. To deal with that situation, the legislature determined that it could be said with a high degree of probability that all occupants of a vehicle are culpably involved when drugs are found secreted in the vehicle and the quantity is large. While recognizing that an innocent person might also be found in the car, it was viewed as unlikely that persons transporting dealer quantities of drugs would drive around with innocent friends or pick up strangers.

The facts indicate that the paradigm situation is present here. A large quantity of cocaine was found protruding from underneath the front seat of the automobile. Petitioner was found to have been in such a position as to have had the drug within his dominion or control, jointly with the other occupants. The rational connection is strong. An automobile is a confined space, subject to the control of its occupants. Whatever the case when a *small* quantity is found secreted in an automobile, this court finds it highly unlikely, as did the legislature, that those transporting a dealer's quantity of cocaine would permit anyone not connected with the drug to accompany

them.[6] Indeed, the testimony indicates that petitioner was not a stranger to the situation.

As construed by the Court of Appeals, the presumption here of knowing possession is permissive in nature, permitting, but not requiring, the jury to find the defendant guilty. *People v. Leyva, supra,* 38 N.Y.2d at 168 & n. 3, 379 N.Y.S.2d at 37 & n. 3, 341 N.E.2d 546. In effect, the presumption operates as an instruction to the jury that an inference of knowing possession may be drawn from the fact of unexplained presence in an automobile with illegal drugs. This permissible inference may be rebutted by any evidence in the case, including the inherent or developed incredibility of the prosecution's witnesses, as well as by the defendant's own testimony. *Id.* at 167, 379 N.Y.S.2d at 36, 341 N.E.2d 546. See also *People v. Lemmons*, 40 N.Y.2d 505, 387 N.Y.S.2d 97, 100 (1976). In light of that construction of the statute and the common sense notions which support the inference, it cannot be said that the statute impermissibly shifts the burden of proof to the defendant. Under these circumstances the presumptive inference of knowing possession is a rational one flowing from the very facts involved, and is so strong as to warrant a jury finding petitioner guilty beyond a reasonable doubt in the absence of any contradictory evidence.

Accordingly, the petition for habeas corpus is denied.

SO ORDERED.

---

6. In this connection, compare *Turner v. United States, supra,* with *United States v. Gonzalez*, 442 F.2d 698 (2 Cir. 1971). In the latter case, the Second Circuit found that the large quantity of cocaine in the possession of the defendant could support the inference of knowledge of importation, notwithstanding *Turner*, in which a very small quantity was involved.