OPINION OF THE COURT
Smith, J.
The primary issue here is whether the trial court erred when it denied defendant’s motion for a Wade hearing on the grounds that the identifications by the undercover police officer were confirmatory. Because we conclude that there was an error, we remit the case for a Wade hearing and, if necessary, a new trial.
On July 12, 1989, an undercover police officer was assigned to make a drug purchase along West 160th Street in upper Manhattan. He approached defendant outside 523 West 160th Street and told him that he wanted to purchase drugs. Defendant then summoned another individual who took the undercover officer to a second-floor apartment in 523 West 160th Street where he purchased drugs from a third individual. Defendant was not present in the apartment when the sale was consummated.
Subsequently, the undercover officer prepared a report in which he identified the location of the transaction as 527 West 160th Street. A search warrant was issued based upon this information and, on July 19, 1989, the police entered the wrong building and apartment and errantly arrested a family of four. The officers recognized their error and quickly voided the arrests.
The undercover officer was sent back to the area to obtain the proper address, and he then determined that he had made the July 12 purchase at 523 West 160th Street. Another warrant was issued and, on August 7, 1989, was executed after the officer purchased drugs from two individuals in the second-floor apartment at 523 West 160th Street.
On August 7, prior to the arrest of the defendant, the undercover saw defendant standing in front of the building at 523 West 160th Street. The undercover officer went upstairs and "conducted official business.” When he came back downstairs, he had a conversation with defendant which lasted *409 about a minute. The undercover testified that defendant indicated through "a facial movement” and "hand movements” that he recognized the undercover officer. The two had a conversation both before and after the undercover went back upstairs "on official police business.” Although defendant was apparently not involved in any purchase of drugs on August 7, he was arrested in the hallway of 523 West 160th Street for criminal sale of a controlled substance in the second degree based on the July 12 transaction. Following his arrest, defendant was viewed by the undercover both in front of the building and at the police station.
At the trial, the undercover, in addition to testifying about the July 12th transaction, was permitted to testify that he saw defendant on August 7 both on the street and at the precinct. The trial court did not permit testimony about the nature of conversations held between the undercover and defendant on August 7. During a portion of the undercover’s testimony, a discussion was held at the bench between the court, the prosecutor and the defense attorney, apparently on defendant’s objection to the prosecutor’s question as to how defendant showed his recognition of the undercover on August 7. That discussion was not recorded and the defense attorney’s efforts to make a record were repeatedly rebuffed by the trial court.*
Defendant’s pretrial motion for a Wade hearing was denied. After a jury trial, defendant was convicted of criminal sale of a controlled substance in the second degree.
On defendant’s appeal, the Appellate Division unanimously affirmed Supreme Court’s judgment, holding that the trial court properly denied defendant’s motion to suppress the identification at the precinct because notwithstanding the more than three-week interval, the identification was "confirmatory.”
Here, defendant contends that Supreme Court erred when it denied his request for a Wade hearing and that the Court violated his right to due process and a fair trial when it refused to allow defense counsel to raise issues of credibility by questioning one of the police officers about the issuance of a search warrant for the wrong address. The People contend *410 that no Wade hearing was necessary and that there was no violation of due process.
Defendant is entitled to a Wade hearing for several reasons. First, this case involves a situation similar to that in People v Newball (76 NY2d 587). There this Court emphasized that a four-week lapse of time between the initial encounter and later identification by the police officer called into question the reliability of the identification and required both a notice from the People that identification testimony would be offered (see, CPL 710.30 [1] [b]) and a hearing.
Second, in People v Wharton (74 NY2d 921, 922-923), in denying a motion for a Wade hearing where the viewing by a trained police officer "occurred at a place and time sufficiently connected and contemporaneous to the arrest itself as to constitute the ordinary and proper completion of an integral police procedure,” this Court stated that a Wade hearing is necessary "[w]here the nature and circumstances of the encounter and identification [so] warrant.” In Wharton, the "assurances of reliability” of the identification were that the identifying officer (1) transacted business with the defendant knowing that he would be arrested shortly thereafter and (2) the same officer identified the defendant at the police station only three hours after the transaction (id., at 923).
In this case, the undercover first transacted business with defendant for minutes only on July 12. By the People’s own admission, he saw defendant "standing outside” as he passed the place of the transaction, but mistakenly wrote 527 West 160th Street instead of 523 West 160th Street. A search warrant was issued and executed for the wrong address based on the undercover’s error. Finally, it was not until August 7, 26 days later, that the undercover returned to the correct address and purchased more drugs, a transaction in which defendant apparently did not participate. Defendant was, however, arrested on August 7 and displayed to the undercover while handcuffed. Several minutes later, while at the precinct, the undercover viewed defendant again. These facts woefully fail the Wharton test, given the passage of time, the conceded error by the undercover, and the suggestiveness of the August 7 identifications of defendant by the undercover. Moreover, in Newball, four weeks elapsed between the identifications of the defendant and that period was held to be critically infirm. Here, the time expired between the undercover’s identifications is only days short of the period in Newball. Additionally, as we made clear in Wharton, the mere *411 labelling of an identification as "confirmatory” will not obviate the need for Wade hearings. Case-by-case analyses of the facts and circumstances in each case remain necessary (see, People v Gordon, 76 NY2d 595, 601 ["(c)omprehensive analysis, not superficial categorization, ultimately governs”]).
Third, it should be clear that the testimony as to the identifications on August 7 is permissible pursuant to CPL 60.30 to strengthen the People’s case only if it refers back to the original transaction of July 12. In other words, the testimony by the undercover that he saw defendant handcuffed outside of the building and also identified him at the police station cannot, on the facts shown here, be considered confirmatory of an earlier viewing on August 7 but must relate back to the July 12th transaction. Thus CPL 60.30 authorizes a witness to testify about an identification of the defendant at a showup or lineup only in addition to the incriminating encounter, that is only when that witness testifies "he observed the person claimed by the people to be the defendant either at the time and place of the commission of the offense or upon some other occasion relevant to the case.” The August 7 observation of the defendant by the undercover had no relevance to the July 12 sale and, accordingly, that portion of CPL 60.30 referring to the date of the commission of the offense must be satisfied.
Finally, acknowledging the precarious nature of the process of identifying individuals in the fast-paced environment of drug transactions, we have noted that misidentifications must be tirelessly avoided to prevent ensnaring innocent individuals in the criminal process notwithstanding the well-meaning intentions of trained officers (see, People v Gordon, 76 NY2d 595, 601, supra). Thus, showup evidence should be avoided and "at the very least, subjected to Wade hearings” to safeguard accuracy (id., at 601).
Defendant is thus entitled to a Wade hearing and, if he prevails at the hearing, to a new trial. If the People prevail at the Wade hearing, the judgment should be amended to reflect that result.
Defendant’s argument as to the cross-examination of the police officer lacks merit.
Accordingly, the order of the Appellate Division should be modified by remitting the case to Supreme Court, New York County, for further proceedings in accordance with this opinion and, as so modified, affirmed.

 It should be noted that any discussion off the record between the court, prosecutor and defendant may leave an appellate court at a disadvantage in reviewing a point on appeal. Where, as here, the defense attorney is also precluded from making a record, the disadvantage is compounded.