Lindley, J.
(concurring). Although I concur in the result reached by the majority, I respectfully disagree in part with its rationale. I agree with the majority that County Court erred in summarily denying defendant’s motion to suppress the undercover officer’s identification. As the Court of Appeals has made clear (see People v Boyer, 6 NY3d 427, 431-432 [2006]), there are only two types of confirmatory identifications that dispense with the need for a Wade hearing: (1) where the witness knows the defendant so well he or she is impervious to suggestiveness by the police (see People v Rodriguez, 79 NY2d 445, 453 [1992]); and (2) where an undercover officer who participates in a buy-and-bust operation identifies the suspect shortly after the purchase to ensure that “an innocent person was not being detained by reason of a mistaken arrest” (People v Wharton, 74 NY2d 921, 923 [1989]). Here, the undercover officer did not know defendant prior to the transaction, and his identification of defendant therefore cannot be deemed confirmatory under Rodriguez. Moreover, because the undercover officer was not involved in defendant’s arrest, his prior identification of defendant was not confirmatory under Wharton. As the majority aptly notes, “[u]nlike the typical ‘buy and bust’ operation with a postarrest station house identification, the undercover officer made no effort to ‘assure himself that [the *1587 Syracuse Police Department] had arrested the man he intended’ (People v Morales, 37 NY2d 262, 271 [1975]).” It thus follows that the court erred in determining that the identification was' confirmatory as a matter of law, and a Wade hearing should be conducted.
I respectfully disagree with the majority, however, that defendant is entitled to a Wade hearing in order “to test the reliability” of the undercover officer’s identification. “The accuracy of an eyewitness identification presents an issue of fact for jury resolution and may not be determined on a motion to suppress” (People v Dukes, 97 AD2d 445, 445 [1983] [emphasis added]; see People v Ross, 288 AD2d 138, 138 [2001], lv denied 98 NY2d 655 [2002]). In my view, there is no basis to suppress identification testimony in the absence of evidence that the identification is tainted by unduly suggestive police procedures, and concerns about the reliability of an identification — apart from alleged improper suggestiveness — go to the weight of the evidence, not its admissibility (see People v Gilmore, 135 AD2d 828, 828 [1987], lv denied 71 NY2d 896 [1988]). Thus, a suppression court is not required to make “a threshold inquiry into the reliability of . . . identification testimony” (People v Reeves, 120 AD2d 621, 622 [1986], lv denied 69 NY2d 715 [1986]).
Indeed, there are many cases where a witness’s identification of a defendant may be of questionable reliability, such as where the witness was under the influence of drugs or alcohol when he or she made the identification, where the witness has an extensive criminal record and has proven to be less than trustworthy, or where a witness has poor eyesight or a faulty memory. Would we suppress the identification testimony of those witnesses in the absence of evidence that they were influenced by unduly suggestive police procedures? I do not think that we would or should. As noted, the rule excluding improper pretrial identifications is “designed to reduce the risk that the wrong person will be convicted as a result of suggestive identification procedures employed by the police” (People v Adams, 53 NY2d 241, 251 [1981] [emphasis added]), not to ensure that trial witnesses give accurate identification testimony.
The majority cites People v Mato (83 NY2d 406, 410 [1994]) for the proposition that a defendant is entitled to a suppression hearing to test the reliability of an undercover officer’s identification. Although the Court of Appeals in Mato referred generally to concerns about the “reliability” of the undercover officer’s identifications of the defendant in that case, the Court
*1588 made clear that it was concerned about the “suggestiveness” of the showup identifications, which occurred while the defendant was in handcuffs standing in front of the building where the drug transaction took place and then again at the police station after defendant was arrested. I do not read Mato as permitting a defendant to make a pretrial motion to challenge the reliability of an identification on grounds other than undue suggestiveness. Indeed, such a rule would appear to be inconsistent with People v Marte (12 NY3d 583 [2009], cert denied 559 US 941 [2010]), where a unanimous Court of Appeals clarified that suppression is warranted only when an identification is tainted by suggestive procedures used by the police (see id. at 586-590). “Where no one in law enforcement is the source of the problem [relating to a possible misidentifieation],” the Court explained, there is no basis to suppress identification testimony, and concerns about reliability of an identification are for the trier of fact to consider (id. at 589).
Present — Carni, J.P., Lindley, DeJoseph, NeMoyer and Trout-man, JJ.